UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KENNETH D. MC ELROY,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>    Defendant. | ) No. CV-08-0281-JPH<br>)<br>) ORDER GRANTING DEFENDANT'S<br>) MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-motions for summary judgment noted for hearing without oral argument on July 31, 2009. (Ct. Rec. 19, 21). Attorney Maureen J. Rosette represents Plaintiff; Special Assistant United States Attorney Franco Becia represents the Commissioner of Social Security ("Commissioner"). The parties have consented to proceed before a magistrate judge. (Ct. Rec. 8.) On July 16, 2009, plaintiff filed a reply. (Ct. Rec. 23.) After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 21) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 19).

**JURISDICTION**

Plaintiff protectively filed an application for supplemental security income benefits (SSI) on February 4, 2005 initially alleging bipolar disorder, paranoia, and alcohol addiction. (Tr.

1 27,76.)  Later plaintiff alleged physical problems following a
2 stroke in 2006.  The application alleges onset as of the date of
3 filing, February 4, 2005. (Tr. 21.)  The application was denied
4 initially and on reconsideration. (Tr. 61-62, 65-68.)  At a
5 hearing before Administrative Law Judge (ALJ) Mary B. Reed on
6 January 17, 2007, plaintiff, represented by counsel, psychologist
7 R. Thomas McKnight, Ph.D., and vocational expert Deborah Lapoint
8 testified.  (Tr. 704-740.)  Upon Judge Reed's retirement, the case
9 was administratively assigned to ALJ Richard A. Say, who held a
10 supplemental hearing on August 22, 2007.  Plaintiff, psychologist
11 Allen Bostwick, Ph.D., and vocational expert Daniel McKinney
12 testified. (Tr. 743-757.) On October 10, 2007, the ALJ issued an
13 unfavorable decision. (Tr. 21-31.)  On October 30, 2007, plaintiff
14 asked the Appeals Council to amend his application seeking a
15 determination that he was disabled for the closed period of
16 February 4, 2005 to January 1, 2007. (Tr. 17.) The Appeals Council
17 received additional evidence and denied the request for review on
18 August 29, 2008.  (Tr. 6-9.)  Therefore, the ALJ's decision became
19 the final decision of the Commissioner, which is appealable to the
20 district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed
21 this action for judicial review pursuant to 42 U.S.C. § 405(g) on
22 September 11, 2008. (Ct. Rec. 1,4.)

**STATEMENT OF FACTS**

24    The facts have been presented in the administrative hearing
25 transcripts, the ALJ's decision, the briefs of both Plaintiff and
26 the Commissioner, and are summarized here.
27    Plaintiff was 48 years old at the time of the hearing.  (Tr.
28 713.) He earned a GED. (Tr. 714, 721.)  Plaintiff has worked as a

telemarketer and occasionally as a day laborer.  (Tr. 94,714-716.) He used methamphetamine and alcohol but quit in June of 2004. (Tr. 717-718, 752.) Plaintiff testified in January of 2007 that he had memory problems after suffering a stroke in 2006, but his memory was "a lot more clear" when he testified on August 22, 2007. (*cf*. Tr. 719-721 *with* Tr. 750.) In January of 2007, he was enrolled in English classes at a community college. (Tr. 720-721.) After the stroke, plaintiff's left hand went numb sometimes, his left leg limped, and he had shoulder pain as well as breathing problems. (Tr. 721-722,727,733-734, 751,753.)  Plaintiff suffers from depression, anxiety, and sleep problems. (Tr. 723, 727-729, 732, 751.) Sleep medication side effects include grogginess the next day. (Tr. 732.) In a typical day, plaintiff attends college classes two hours in the morning; he then goes to AA meetings, studies, or watches television. Plaintiff washes dishes, makes his bed and buys groceries. A friend helps him organize paying bills. (Tr. 724-726, 734-735.)

### SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences,

engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work, that Plaintiff is deemed not

disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).
At this step, plaintiff's residual functional capacity ("RFC")
assessment is considered.  If plaintiff cannot perform this work,
the fifth and final step in the process determines whether
plaintiff is able to perform other work in the national economy in
view of plaintiff's residual functional capacity, age, education
and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),
416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once plaintiff establishes that a physical or mental impairment prevents the performance of previous work.  The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported

by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either

disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

The ALJ found at step one that although plaintiff earned some income after onset, he has not engaged in substantial gainful activity. (Tr. 23.) At steps two and three, the ALJ found that plaintiff suffers from status post cerebral vascular accident (CVA) an impairment that is severe but which does not meet or medically equal a Listing impairment. (Tr. 23, 25.) The ALJ found plaintiff less than completely credible. (Tr. 27.) At step four, relying on the VE, the ALJ found plaintiff's RFC for a full range of light work does not preclude him from performing his past relevant work as a telephone solicitor. (Tr. 30.) Accordingly, the ALJ found that plaintiff is not disabled as defined by the Social Security Act. (Tr. 31.) Because the ALJ found plaintiff not disabled at step four, no step five determination was necessary.

## ISSUES

Plaintiff contends that the Commissioner erred as a matter of law by failing to properly weigh the psychological evidence, specifically by rejecting the opinion of W. Scott Mabee, Ph.D., in favor of the opinions of Joyce Everhart, Ph.D., R. Thomas McKnight, Ph.D., and Allen Bostwick, Ph.D. Plaintiff asserts that, had the ALJ properly weighed the psychological evidence, he would have found plaintiff's psychological impairments severe at step two. (Ct. Rec. 12-17.) The Commissioner responds that the ALJ appropriately weighed the evidence and asks the Court to

affirm his decision.  (Ct. Rec. 22 at 5,18).

**DISCUSSION**

**Weighing medical evidence**

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908.  The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929.  Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms.  *Bunnell v. Sullivan*, 947, F. 2d 341, 345 (9th Cr. 1991).

A treating physician's opinion is given special weight because of familiarity with the claimant and the claimant's physical condition.  *Fair v. Bowen*, 885 F. 2d 597, 604-05 (9th Cir. 1989).  However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability."  *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted).  More weight is given to a treating physician than an examining physician.  *Lester v. Cater*, 81 F.3d 821, 830 (9th Cir. 1996).  Correspondingly, more weight is given to the opinions of treating and examining physicians than to nonexamining physicians.  *Benecke v. Barnhart*, 379 F. 3d 587, 592 (9th Cir. 2004).  If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons*. Lester*, 81 F. 3d at 830.

If contradicted, the ALJ may reject an opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F. 3d 1435, 1463 (9th Cir. 1995).

In addition to the testimony of a nonexamining medical advisor, the ALJ must have other evidence to support a decision to reject the opinion of a treating physician, such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the treating physician's opinion. *Magallanes v. Bowen*, 881 F.2d 747, 751-52 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1042-43 (9th Cir. 1995).

Step two analysis

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms. *Bunnell v. Sullivan*, 947, F. 2d 341, 345 (9th Cr. 1991).

An impairment or combination of impairments may be found "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb. Barnhart*, 433 F. 3d 683, 686-687 (9th Cir.

2005)(citing *Smolen v. Chater*, 80 F. 3d 1273, 1290 (9th Cir. 1996); *see Yuckert v. Bowen*, 841 F. 2d 303, 306 (9th Cir. 1988). If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step. S.S.R. No. 85-28 (1985). Step two, then, is "a de minimus screening device [used] to dispose of groundless claims," *Smolen*, 80 F. 3d at 1290, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." S.S.R. 85-28. The question on review is whether the ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. *Webb*, 433 F. 3d at 687; *see also Yuckert*, 841 F. 2d at 306.

Plaintiff's main contention is that the ALJ failed to properly credit Dr. Mabee's opinions following his evaluations on May 25, 2006, and April 18, 2008. (Ct. Rec. 20 at 15-17, referring to Tr. 301-309, 690-701.) If the ALJ properly credited these opinions, plaintiff alleges, he would have been found to have severe mental impairments at step two, necessitating further administrative determination.

In 2006, Dr. Mabee, together with Steven E. Erickson, M. Ed., a counseling therapist, diagnosed social anxiety disorder, polysubstance abuse in sustained full remission, rule out bipolar

disorder, personality disorder NOS, and a current GAF of 40-50[1]. (Tr. 304.)  Following the second evaluation about two years later, Amy Robinson, under Dr. Mabee's direct clinical supervision, diagnosed major depressive disorder, recurrent and moderate; anxiety disorder NOS; polysubstance abuse and pathological gambling in full sustained remission (by report); personality disorder NOS with avoidant features; and a GAF of 50-55 with respect to current, social and occupational functioning. (Tr. 697.)

The ALJ considered Dr. Mabee's opinions:

> At the hearing in January 2007, R. Thomas McKnight,Ph.D., psychologist, was called to testify as an impartial medical expert.  After a thorough review of the record available at that time, Dr. McKnight testified that the May 2006 psychological examination by Dr. Mabee was internally inconsistent as it found the claimant to have a full scale IQ of 107 and no cognitive deficits on evaluation and testing but noted Dr. Mabee's conclusions relative to cognitive difficulties implied difficulties not represented in the test results. (Exhibit 8F) Prior neuropsychological consultations showed the claimant's memory to be sufficient and his thought processes concrete and literal. (Exhibit 1F) Dr. McKnight also noted the claimant's drug and alcohol treatment program completed in January 2005 found the claimant to have alcohol and amphetamine dependence with a Global Assessment of Functioning (GAF) score of 70 indicating some mild symptoms or some difficulty in social, occupational or school functions but generally functioning pretty well, having some meaningful interpersonal relationships. That

---

[1] A GAF (Global Assessment of Functioning) of **40** indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school.) A GAF of **41-50** indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION (DSM-IV) at p. 32.

> chart note also mentioned that multiple sclerosis or a stroke, together with substance abuse, triggered the claimant's psychotic problems [sic] [in] 2004. (Exhibit 3F)
>
> Dr. McKnight also noted that the Spokane Mental Health Psychiatric Assessment in March 2005 found the claimant with a good affect and diagnoses of a mood disorder, not otherwise specified, rule out a possible bipolar disorder and substance addiction in remission. Dr. McKnight further testified that although the July 2004 brain MRI showed structural problems cognitively, in terms of overall functioning, absent use of street drugs, there was little indication of significant limitations. Dr. McKnight testified he could not find a reasonable description of a personality disorder as found by Dr. Mabee (Exhibit 6F) and there were no active diagnosis [sic] of such (Exhibit 6F) and no characteristics were noted for a personality disorder. Dr. McKnight testified that the problem he had with finding the claimant had anxiety disorder was that the claimant was taking the type of street drugs[2] during that time that could mimic significant anxiety symptoms and trigger psychotic manifestations and the record supported that one [sic] he stopped those drugs, his symptoms dramatically improved[3]. Dr. McKnight recommended further psychological testing be performed as the claimant had been drug and alcohol abstinent for several years.

(Tr. 27-28.)

The ALJ notes plaintiff then underwent an evaluation by Joyce Everhart, Ph.D., on March 9, 2007 (in between Dr. Mabee's evaluations and following the first hearing). The ALJ summarizes Dr. Everhart's findings:

> The claimant presented with allegations of memory problems with recall and understanding and with depression and anxiety. On examination, Dr. Everhart noted that the claimant did not present with a depressed or an extremely anxious demeanor. Comprehensive psychological testing revealed that he had good memory without organic organic mental deficiencies. The results of the . . . (MMPI-2) were deemed invalid because of certain testing scale scores indicating that the claimant was exaggerating symptoms. (fn 2.) However, the Test of Memory Malingering (TOMM) suggested

---

[2] On March 3, 2005, plaintiff told Dr. Adams he "binged" on methamphetamine for six months before he entered treatment. Plaintiff said he ingested one gram a day. (Tr. 272.)

[3] On November 11, 2004, plaintiff denied a history of mania or previous psychotic symptoms "except hallucinations while using crank." (Tr. 239.)

>the claimant was making a credible effort. After testing, claimant was diagnosed with a mild anxiety disorder, mainly based on a self-report anxiety index, a mild depressive disorder, a history of substance induced psychosis and multiple substance addiction disorders in remission with a . . . (GAF) score of 65 to 70 indicating some mild symptoms or some difficulty in social, occupational or school functions but generally functioning pretty well and having some meaningful interpersonal relationships. (Exhibit 3) (fn 3 omitted).
>
>   Specifically, Dr. Everhart found the claimant capable of: independently performing his activities of daily living including person care and household chores. His attention, concentration and intellectual abilities were within normal limits. He was able to listen, understand, remember and follow directions for simple tasks and he could complete three-step tasks. Dr. Everhart also noted that the claimant's then current level of functioning represented his ability to function when he is drug free. (Exhibit 19f) Upon completion of the Mental Residual Functional Capacity Assessment, Dr. Everhart reported that the claimant had slight (fn 4 omitted) to no limitations in all functional areas involving the ability to perform work-related activities. (Exhibit 20F)

(Tr. 28.)

The ALJ rejected the moderate, marked and severe impairments initially assessed by Dr. Mabee in part because they were inconsistent with his own test results, and inconsistent with Dr. Everhart's (also an examining psychologist's) test results.  These reasons are specific, legitimate, and fully supported by the evidence.

The ALJ considered the opinion of Dr. Bostwick, who testified at the second hearing and reviewed Dr. Everhart's recent report, in addition to the rest of the record. (Tr. 28-30.) The ALJ notes Dr. Bostwick opined the record supported a history of substance-induced psychotic disorder under Listing 12.02 that resulted in plaintiff's psychiatric hospitalization, with the associated history of substance addiction disorder, primarily alcohol and methamphetamine.  Both were in sustained full remission as of July of 2004, based on all the exhibits of record, when plaintiff

- 13 -

stopped using alcohol and methamphetamine. (Tr. 28-29, referring to Tr. 745-746.) Dr. Bostwick, the ALJ notes, opined plaintiff had mild depressive and mild anxiety symptoms, neither of which met the level of a disorder. (Tr. 29.) The ALJ points out Dr. Bostwick's opinion that plaintiff does not have a severe mental impairment as indicated by prior testing. (Tr. 29.)

In assessing the existence of a severe mental impairment, the ALJ considered plaintiff's statements and activities. (Tr. 29-30.) The ALJ refers to, but does not quote, plaintiff's March 3, 2005[4] statement to treatment provider Jacob Adams, M.D.,:

> "He also stated that he does not feel like he was ever really depressed from the time he was young until the time he was having problems and in the hospital. He stated that his drinking was more of a medication for anxiety, but he had a very difficult time explaining what he had anxiety about."

(Tr. 29, referring to Tr. 272.) The ALJ observes the providers at Spokane Mental Health found plaintiff's mood extremely stable. They noted occasional mild cognitive impairment from his medication. (Tr. 29, referring to Exhibit 6F.)

In weighing the conflicting medical evidence, the ALJ notes plaintiff applied for various jobs indicating his belief that he could work. (Tr. 29, referring to Exhibit 10F at Tr. 325, 371, 375.) And, the ALJ adopts the opinions of Drs. McKnight, Everhart and Bostwick (who affirm the agency consultant opinions), that plaintiff did not have a severe mental impairment meeting the twelve month durational requirement of the Act. (Tr. 30.)

To further aid in weighing the conflicting medical evidence,

---

[4] Plaintiff made the statement about one month after February 4, 2005, the beginning of the claimed closed period of disability.

the ALJ evaluated plaintiff's credibility and found him less than fully credible. (Tr. 26-30.)  Credibility determinations bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and diagnosed condition.  *See Webb v. Barnhart*, 433 F. 3d 683, 688 (9th Cir. 2005).

It is the province of the ALJ to make credibility determinations.  *Andrews v. Shalala*, 53 F. 3d 1035, 1039 (9th Cir. 1995).  However, the ALJ's findings must be supported by specific cogent reasons.  *Rashad v. Sullivan*, 903 F. 2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence.  *Reddick v. Chater*, 157 F. 3d 715, 722 (9th Cir. 1998).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  *Lester v. Chater*, 81 F. 3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F. 3d at 834; *Dodrill v. Shalala*, 12 F. 3d 915, 918 (9th Cir. 1993).

The ALJ relied on several factors when he assessed credibility, including activities inconsistent with the degree of impairment alleged. (Tr. 27). The ALJ notes plaintiff's application alleged an inability to perform work-like activities due to bipolar disorder, paranoia and alcohol addition; however, at the same time, he indicated he needed no help with personal care, and daily activities included watching television, going for

walks and attending church. (Tr. 27.) Complaints of memory problems have not been corroborated by objective testing nor by plaintiff's ability to complete college classes. The level of daily activities and inconsistent statements both decrease credibility. *See Thomas v. Barnhart*, 278 F. 3d 947, 958-959 (9th Cir. 2002).

The ALJ's reasons for finding plaintiff less than fully credible are clear, convincing, and fully supported by the record. *See Thomas v. Barnhart*, 278 F. 3d at 958-959 (proper factors include inconsistencies in plaintiff's statements, inconsistencies between statements and conduct, and extent of daily activities).

To the extent the ALJ rejected the contradicted opinions of some of the professionals, his reasons are legitimate, specific, and supported by substantial evidence in the record. *See Lester v. Chater*, 81 F. 3d 821, 830-831 (9th Cir. 1995)(holding that the ALJ must make findings setting forth specific, legitimate reasons for rejecting the treating physician's contradicted opinion).  It is noteworthy that Dr. Mabee is an examining, not a treating, psychologist. Even applying the higher standard applicable to treating psychologists, the ALJ's reasoning is free of error.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F. 2d 747, 751 (9th Cir. 1989).  It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400.  The court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ, even if it might justifiably have reached a different result

1  upon de novo review.   42 U.S.C. § 405 (g).

2      The record supports the AlJ's step two determination that, absent DAA, plaintiff does not suffer from psychological impairments which more than mildly affect his ability to be gainfully employed.  The record shows that after a stroke on November 3, 2006, plaintiff was prescribed lipitor, as well as aspirin, physical, and occupational therapy. (Tr. 570, 576, 600-610.)  The ALJ notes the record shows plaintiff did not return to neurologist J. Robert Clark, M.D., after December of 2006 (Exhibit 22F at Tr. 661), nor do any subjective findings support ongoing medical conditions associated with the stroke.  (Tr. 29.) The ALJ is correct.

13      The ALJ's credibility determination and weighing of the medical evidence is based on substantial evidence in the record and free of legal error.

**CONCLUSION**

17      Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is free of legal error and supported by substantial evidence..

20  **IT IS ORDERED:**

21      1. Defendant's Motion for Summary Judgment **(Ct. Rec. 21)** is **GRANTED.**

23      2. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 19)** is **DENIED.**

25      The District Court Executive is directed to file this Order, provide copies to counsel for Plaintiff and Defendant, enter judgment in favor of Defendant, and **CLOSE** this file.

28      DATED this 12th day of August, 2009.

```
                              s/ James P. Hutton
                              JAMES P. HUTTON
                        UNITED STATES MAGISTRATE JUDGE
```